# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| KASHMIR SINGH | : | DOCKET NO. 2:05-cv-1673 Section P |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| ALBERTO GONZALES, ET AL. | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by petitioner, Kashmir Singh. In his petition, the petitioner challenges his continued detention pursuant to INA § 241(a)(6) and argues that there is no significant likelihood of his being removed in the reasonably foreseeable future. This matter was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

After reviewing the facts alleged in the petition and the answer by the respondent, it was determined that an evidentiary hearing was necessary for the adjudication of this *habeas corpus* petition and counsel was appointed for petitioner. On June 29, 2006 an evidentiary hearing was held before the undersigned for the express purpose of hearing evidence on the issues of whether there is a significant likelihood of removing Petitioner in the reasonably foreseeable future, whether the petitioner has been detained beyond what is reasonably necessary to secure his removal, and/or whether petitioner has taken steps to hamper the removal efforts of the United States Immigration & Customs Enforcement. [doc. 13]. Petitioner does not speak English, and he was provided with an interpreter for the evidentiary hearing.

## FACTUAL SUMMARY

Petitioner is a native and citizen of India who last entered the United States in 1995. He is

currently under an order or removal which became final on December 19, 2002. Petitioner was taken into custody by Immigration & Customs Enforcement (ICE) officials on April 2, 2004. He has been in post-removal-order custody since that time.

Petitioner's deportation officer, Karen Lilly, testified at the evidentiary hearing that documents in petitioner's A-File indicate that in the past petitioner has refused to assist the immigration officials in their efforts to obtain a travel document for him. Specifically, Ms. Lilly testified that in July, 2004, petitioner refused to be interviewed by the Indian Consulate and that he refused to fill out passport applications on several occasions between July, 2004 and April, 2005. During his testimony, petitioner explained that he did not sign any papers presented to him in 2004 because he did not have an interpreter to assist him and because he did not understand the nature of the documents or what the immigration officials wanted him to do. It is undisputed that since April, 2005, petitioner has completed, with the assistance of someone who understands English, at least two passport applications which were forwarded to the Indian Consulate.

Ms. Lilly testified that because there was no response to the travel document request made in April, 2005, the matter was turned over to ICE's headquarters in mid-2005 under a new policy to establish a better working relationship with the Indian Consulate. Ms. Lilly further testified that in March, 2006 a pilot program was established with the Indian Consulate under which all paperwork for travel documents had to be re-submitted so that it could be presented to the Indian government. *See* Government Exhibit A. This pilot program was instituted to deal primarily with Indian natives who had been in detention for a long time and who had no identity documents. Petitioner's application for a travel document was submitted to the Indian government under this pilot program in March or April, 2006. India returned the application to ICE and requested additional information. Ms. Lilly's testimony indicates that on May 5, 2006, petitioner's application was re-submitted to the Indian

government with the additional information. *See* Government Exhibit 1. Based upon communications with ICE headquarters and India, she expects a response to the travel document request within 90 days from the date the request was made. It is her stated belief that this response will be favorable and that India will issue a travel document for petitioner, and that he will be removed within 30 days of receipt of the travel documents.

At the close of the hearing, petitioner's attorney argued that petitioner has been in post-removal-order custody for more than two years, that since April, 2005 he has cooperated with efforts to remove him by providing requested information[1], and that he is entitled to be released pending his eventual removal.

The government countered that the petitioner has failed to show that his removal is not likely to occur in the reasonably foreseeable future and that the testimony of Ms. Lilly indicates that there is a likelihood that petitioner will be removed within the reasonably foreseeable future. Additionally, the government argued that petitioner has not fully and completely cooperated with efforts to remove him by providing ICE with all relevant information.

## LAW AND ANALYSIS

Petitioner has been in post-removal-order detention pursuant to INA § 241(a)(6) for more than 2 years. The issue before the court is whether his removal is likely to occur in the reasonably foreseeable future.

In *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001), the United States Supreme Court found that INA §241(a)(6), when "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.

---

[1] It is petitioner's position that his failure to cooperate with removal efforts prior to that time was the result of a language barrier and not a deliberate attempt to thwart removal efforts.

It does not permit indefinite detention." *Zadvydas*, 121 S.Ct. at 2498. The Supreme Court went on to recognize six months as a presumptively reasonable period of detention for INS detainees following a final order of removal. *Zadvydas*, 121 S.Ct. at 2504.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing. And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 121 S.Ct. 2505.

Because petitioner has been in post-removal-order detention for a period of time greater than 6 months, there is no longer a presumption of reasonableness attached to his detention. While this does not mean that petitioner is automatically entitled to be released from post-removal-order detention, it does allow a *habeas* court to inquire into "whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas*, 121 S.Ct at 2504. In *Zadvydas*, the Supreme Court stated that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."

The initial inquiry the court must make is whether petitioner has borne his burden of showing that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Based upon the length of time that petitioner has been in post-removal-order custody (over 26 months), the fact that travel document requests have been pending for more than a year, and the fact that India has failed to indicate that it might issue a travel document in the reasonably foreseeable future, the court finds that the petitioner has satisfied this burden.

The burden now shifts to the government to respond with evidence sufficient to rebut the petitioner's showing. *Zadvydas*, 121 S.Ct. at 2505. In order to satisfy its burden, the government argues

4

that Ms. Lilly's testimony establishes that petitioner is likely to be removed in the reasonably foreseeable future and that petitioner has failed to fully and completely cooperate with removal efforts by providing all relevant information.

A review of Ms. Lilly's testimony reveals that ICE expects to get an answer from India by at the beginning of August, 2006 regarding whether or not it will issue a travel document for petitioner and that it is Ms. Lilly's belief that India will issue a travel document for petitioner. However, there is nothing in her testimony which indicates the factual basis for her belief that a travel document will be issued for petitioner.[2] Further, the government could point to no specific information which petitioner had not provided which would make a material difference in his situation. The testimony at the hearing indicated that petitioner's A-file contains information about his wife and that petitioner had provided the names of his deceased parents and the name of the village where he was born.[3]

Notwithstanding the sparse evidence presented to support the government's position that there is a significant likelihood of removing petitioner in the reasonably foreseeable future, the court finds that there is evidence before the court that a response from India is expected in less than one month and that petitioner's deportation officer believes that this response will be favorable. Accordingly, the court finds that petitioner's continued detention while awaiting the response from India is reasonable. However, if petitioner takes no steps to hamper his removal and yet is not removed by September 5,

---

[2] Ms. Lilly testified that travel documents were issued for approximately 30 Indian nationals throughout the United States under this pilot program and that some at least some of these cases were comparable to Mr. Singh's. However, she also testified that the pilot program is no longer in effect because the Indian government now has a computerized system which can expedite the handling of cases where the aliens have identifying information.

[3] Although the government pointed out that the names of petitioner's wife and son were not included on the applications for travel documents filled out by him, the petitioner testified at the hearing that he provided this information to the person who helped him complete the application.

5

2006[4], the court finds that the length of his detention will exceed what is reasonably necessary to secure his removal. At that point his detention will be no longer authorized by statute.

For the reasons stated above,

IT IS RECOMMENDED that the petition for writ of *habeas corpus* be GRANTED to the extent that petitioner be released from custody[5] if not removed on or before September 5, 2006. Otherwise the petition is DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, July 10, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[4] This date reflects the government's position that India will respond to the request for a travel document by August 5, 2006 and allows the government 30 days to effect petitioner's removal after that if a travel document is, in fact, issued for petitioner.

[5] In the event that ICE is not able to remove petitioner on or before September 5, 2006, his release may, of course, be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and he may, no doubt, be returned to custody upon violation of those conditions. *Zadvydas v. Davis*, 121 S.Ct. 2491, 2504 (2001); 8 U.S.C. § 1231(a)(3).